**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

|  |  |  |
|---|---|---|
| ———————————————— ) | | |
| PORTFOLIO RECOVERY ASSOCIATES, ) | | |
| LLC, ) | | |
| ) | | |
|     Plaintiff, ) | | CIVIL ACTION FILE NO. |
| ) | | |
| v. ) | | NO. 4:09-CV-00113-CDL |
| ) | | |
| ERIC BARKWELL, ) | | |
| ) | | |
|     Defendant. ) | | |
| ————————————————) | | |
| ) | | |
| ERIC BARKWELL, on behalf of himself ) | | |
| and all others similarly situated, ) | | |
| ) | | |
|     Counterclaimant, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| PORTFOLIO RECOVERY ASSOCIATES, ) | | |
| LLC, MBNA AMERICA BANK, N.A., ) | | |
| and NATIONAL ARBITRATION ) | | |
| FORUM, INC., ) | | |
| ) | | |
|     Counterdefendants. ) | | |
| ————————————————) | | |

**FIRST AMENDED CLASS ACTION COUNTERCLAIM**

    Counterclaimant Eric Barkwell, by and through his attorneys of record, on behalf of

himself and a class of persons similarly situated, and upon personal knowledge as to his own

actions and information and belief as to all other matters, brings this First Amended Class Action

Counterclaim against Counterdefendants Portfolio Recovery Associates, LLC ("Portfolio"),

MBNA America Bank, N.A. ("MBNA"), and National Arbitration Forum, LLC ("NAF").[1] MBNA and NAF were not parties in the original action between Portfolio and Mr. Barkwell and are, therefore, third-party defendants pursuant to O.C.G.A. § 9-11-14.  For the sake of brevity, however, hereinafter the term "Counterdefendants" shall refer to Portfolio, MBNA, and NAF.

INTRODUCTION

1.

Buried in the vast "agreements" that most credit card companies impose upon their customers are mandatory arbitration clauses which declare that customers forfeit their right to have any relevant dispute resolved by a judge or jury and that all disputes must be submitted to binding arbitration.  Many of these agreements specify that such arbitrations will be resolved exclusively through the use of the arbitration services provided by NAF.

2.

For many years, NAF has held itself out to the general public, the courts, and individuals as an independent, impartial entity that is not affiliated with creditors or the debt collection industry.  In reality, however, NAF has worked for years behind the scenes with creditors and against the interests of ordinary consumers, encouraging them to include arbitration clauses within their contracts and to appoint NAF as the arbitrator, and even referring them to debt collection firms (which then file arbitration claims with NAF against consumers).

3.

Through complex corporate structures and affirmative misrepresentations, NAF has gone to great lengths to conceal from the public its financial affiliation with Accretive, LLC, a New

---

[1] By filing this Amended Counterclaim, Mr. Barkwell in no way intends to waive the position taken in his Motion to Remand (Dkt. No. 10) that this Court has no jurisdiction over this matter and that the case should be remanded to the Muscogee County Superior Court immediately.

York hedge fund group that owns Axiant, LLC, one of the nation's biggest debt collection enterprises.

4.

The credit card and debt collection industries, which include Portfolio and MBNA, are, and at all relevant times were, well aware that NAF was not a disinterested neutral and had major financial incentives to rule against consumers during arbitrations; however, they made no effort to inform consumers of this fact and even continued to submit disputes with consumers to NAF for arbitration.

5.

In July 2009, the Minnesota Attorney General ("AG") sued NAF in Minnesota state court, alleging violations of Minnesota's consumer fraud, false advertising, and deceptive trade practices laws. In its complaint, the AG exposed NAF's concealed relationships with the debt collection industry.

6.

A few days later, NAF settled with the AG and stipulated that it would cease conducting consumer arbitrations throughout the United States.

7.

NAF's immediate decision to forego the millions of dollars that it would have continued to earn per year arbitrating consumer disputes undeniably reveals the substantial merit behind the AG's allegations.

8.

Counterclaimant Eric Barkwell is one of the many consumers who have been harmed by the actions of Portfolio, MBNA, and NAF. He brings this counterclaim on behalf of himself and

all other persons that have been injured by being subjected to bogus NAF arbitrations by MBNA or Portfolio.

PARTIES

9.

Counterclaimant Mr. Barkwell is a resident of Muscogee County, Georgia and formerly maintained a credit card account with MBNA.

10.

The Currently Unnamed Counterclaimants are those individuals that have been harmed by the acts and practices of Counterdefendants.  It is anticipated that thousands of potential Class Members will be revealed through the discovery process.

11.

Counterdefendant Portfolio is a foreign company in the business of collecting on consumer debts.  Portfolio has already been served with process and has appeared to defend itself in this case.

12.

Counterdefendant MBNA, a foreign company, has long been one of the largest credit card issuers in the country.  Since Mr. Barkwell began his relationship with MBNA, the company has been purchased by Bank of America.  MBNA provided credit card services to millions of consumers, including Mr. Barkwell.  MBNA has already been served with process and has appeared to defend itself in this action.

13.

Counterdefendant NAF, National Arbitration Forum, Inc., a foreign company, was until very recently the nation's largest provider of consumer debt collection arbitrations. NAF has already been served with process and has appeared to defend itself.

JURISDICTION AND VENUE

14.

Pursuant to O.C.G.A. § 9-10-91(a)-(b), Counterdefendants are subject to the personal jurisdiction of the Superior Court of Muscogee County because (i) they transact business within Georgia and (ii) they have committed tortious acts in Georgia. Additionally, the Superior Court, as a court of general jurisdiction, has subject matter jurisdiction over the claims raised herein.

15.

Pursuant to O.C.G.A. § 9-10-93, venue in this Court is proper because Counterdefendants conduct substantial business in Muscogee County and some of the tortious acts of which Counterclaimants complain occurred in Muscogee County.

FACTUAL ALLEGATIONS

16.

Because NAF earns substantial revenue whenever it arbitrates a dispute, for years it attempted to convince as many companies as possible to (i) include mandatory arbitration provisions in their customer agreements and (ii) to require that NAF be appointed as the arbitrator of such disputes. Indeed, NAF employed several individuals who were compensated based on the number of companies they convinced to follow this business model.

17.

NAF focused much its marketing efforts on credit card companies by doing its best to convince them that arbitration is a cheap and easy collection tool, and going so far as to emphasize that because consumers do not know what to expect from arbitration, they are more willing and likely to pay their debts.

18.

Prior to 1999, MBNA cardmember agreements did not contain mandatory arbitration clauses.

19.

In or about this time, NAF approached MBNA and proposed it include an arbitration provision in its cardmember agreement and name NAF as the arbitrator of all disputes.

20.

Upon information and belief, NAF provided assistance to MBNA in drafting the arbitration clause that would appear in its cardmember agreement.

21.

In or about 1999, Mr. Barkwell opened a credit card account with MBNA. The credit agreement governing Mr. Barkwell's account allegedly contained a clause whereby Mr. Barkwell forfeited his right to have any dispute resolved by a judge or jury and instead required that he submit to binding arbitration through NAF.

22.

At the time Mr. Barkwell opened his account, MBNA knew or should have known that NAF was not a neutral arbitration service, but instead worked closely with creditors which fueled its business in response for assurances as to the favorable outcome of the vast majority of

arbitrations.  MBNA also knew or should have known that, based on the foregoing, it would have a decided advantage in any future arbitration against Mr. Barkwell.  Nevertheless, MBNA never made any effort to inform consumers like Mr. Barkwell of these vital facts prior to attempting to bind him to the mandatory NAF arbitration clause.

23.

Rather, MBNA sat idly by as NAF deliberately created the false perception that it is "an independent and impartial arbitration organization" that does not give legal advice, but rather operates like a court system.

24.

Had Mr. Barkwell and similarly situated consumers been aware that NAF (i) solicited MBNA to place a mandatory arbitration provision in its agreement, (ii) helped it draft the arbitration provision, (iii) done so on the condition that it be named as arbitrator, (iv) encouraged MBNA to pursue collection actions against its customers through arbitration, and (v) assisted MBNA in drafting arbitration claim forms, (vi) counseled MBNA on legal trends affecting arbitration, (vii) referred it to debt collection law firms, and (viii) made certain that MBNA prevailed in the vast majority of its anti-consumer arbitrations, they certainly would not have agreed to be bound by such a provision.

25.

Several years ago, Mr. Barkwell lost his job and fell behind on his credit card account with MBNA.

26.

MBNA purportedly then sold Mr. Barkwell's debt to Portfolio.

27.

As a debt-collector since at least 1996, Portfolio was well aware that NAF was a biased arbitration service that was beholden to creditors and debt collection companies.  Indeed by the time Mr. Barkwell's debt was sold to Portfolio, it was well known in the industry that the NAF and the debt collection firm of Axiant, LLC were under common ownership.

28.

This fact, however, was consciously hidden from the public.  NAF formed complicated corporate structures to avoid public discovery of its relationship with the debt collection industry. NAF executives also informed employees that there should be "no public information" connecting NAF to its debt collection partners, concealed material facts about the relationship when directly questioned, and even made affirmative misrepresentations.

29.

Despite its knowledge of NAF's bias and partiality, Portfolio purchased the MBNA contracts that contained the void arbitration clauses and the credit contracts of many other individuals that set forth similar clauses.  Furthermore, Portfolio never made any effort to inform Mr. Barkwell or such individuals of the realities surrounding NAF and even consciously pursued arbitration claims against them through NAF.

30.

Indeed, in or about the Fall of 2008, Portfolio filed an Arbitration Claim with NAF against Mr. Barkwell.  In conjunction with this filing, Mr. Barkwell was notified by NAF and Portfolio that NAF "is an independent and impartial arbitration organization, which does not give legal advice or represent parties" and that "[p]arties have a full and equal right to present relevant

and reliable direct and cross examination testimony, documents, exhibits, evidence and arguments."

31.

Despite the foregoing misrepresentations, Counterdefendants knew at the onset of arbitration, that regardless of whether consumers such as Mr. Barkwell actively participated in the proceedings or defaulted, such individuals would not receive legitimate dispute resolution services, and that NAF would issue an award against consumers and in favor of the credit and debt collection industry.  Indeed, NAF's own statistics reveal that from 2003 to 2007 in the State of California, every case where a business entity brought a claim against a consumer and the matter was disposed of by hearing, the NAF arbitrator ruled in favor of the business entity – a 100 percent success rate.

32.

NAF apparently entered a judgment against Mr. Barkwell, without offering proper notice to Mr. Barkwell and without any appearance by Mr. Barkwell.  The judgment, which is a NAF-generated form document entitled "Claimant(s) Award," makes several conclusions such as "[t]he Arbitrator has reviewed all evidence submitted in this case," "[t]he Arbitrator knows of no conflict of interests that exist," "[t]he evidence submitted supports the issuance of this Award," and "[t]he applicable substantive law supports the issuance of the Award."   Such identical findings are contained in virtually every decision rendered by NAF.

33.

The judgment was entered against Mr. Barkwell and in favor of Portfolio in the amount of $9,781.43, which is thousands of dollars more than Mr. Barkwell's true debt to MBNA.  Mr.

Barkwell believes the sizeable gap between the underlying debt and the award is due to improper inclusion of Portfolio's legal fees and costs associated with NAF's "services."

34.

On July 14, 2009, Portfolio filed the Application against Mr. Barkwell, seeking a judgment confirming the NAF arbitration award.

CLASS ACTION ALLEGATIONS

35.

Mr. Barkwell brings this action both individually and on behalf of at least all (i) current or former MBNA account holders who were subjected to arbitration with NAF due to a mandatory arbitration clause in their MBNA cardmember agreement and (ii) all individuals who were subjected to arbitration with NAF after having their debt acquired by Portfolio. The full and final extent of the class definition will be determined after reasonable class discovery.

A.     The Criteria for Class Certification Pursuant to O.C.G.A. § 9-11-23(a)(1)-(4) Have Been Satisfied.

36.

The Class of persons described above is so numerous that joinder of all members by name in one action is impracticable. All injuries sustained by any member of the Class arise out of Counterdefendants' improper practices.

37.

Important questions of law and fact exist which are common to the entire Class and predominate over any questions that may affect individual Class Members in that Counterdefendants have acted on grounds generally applicable to the entire Class. By way of example, the following is a list of issues common to the entire class:

(a)     Whether NAF is beholden to the credit and debt collection industries?

(b)     Whether NAF is financially tied to the credit and debt collection industries?

(c)     Whether MBNA and Portfolio knew or should have known the foregoing facts?

(d)     Whether MBNA included mandatory NAF arbitration provisions in its cardmember agreements despite being aware that NAF was not an impartial or unbiased arbitrator?

(e)     Whether it is a reasonable business practice for MBNA to include and enforce mandatory arbitration clauses in its cardmember agreements after it knew that NAF was not an impartial or unbiased arbitrator?

(f)     Whether MBNA and Portfolio pursued arbitrations through NAF against the Class despite their knowledge that NAF was not an impartial or unbiased arbitrator?

(g)     Whether Counterdefendants representations about the legitimacy of NAF's arbitration services were false?

(h)     Whether Counterdefendants knew or should have known that their representations about the legitimacy of NAF's arbitration services were likely to deceive the Class?

(i)     Whether the cardmember agreements that contain the NAF mandated arbitration proceedings are void as a matter of law?

(j)     Whether MBNA and Portfolio breached their contracts with the Class?

(k)     Whether the Class has been damaged by Counterdefendants' conduct?

38.

All questions as to the actions attributable to Counterdefendants at issue herein are similarly common. A determination of liability for such conduct will also be applicable to all members of the Class. Furthermore, whether Counterdefendants violated any applicable state

11

laws and pursued the course of conduct complained of herein and the appropriate method of measuring the damages and restitutionary relief are common questions to the Class.

39.

The claims of Mr. Barkwell are typical of the claims of the Class in that he suffered damages as a result of Counterdefendants' improper practices, as described herein.

40.

Mr. Barkwell will fully and adequately represent and protect the interests of the entire Class because of the common injuries and interests of the Class and the uniform conduct of Counterdefendants as to the Class. Counterplaintiff has retained counsel competent and experienced in the prosecution of class action litigation. Counterplaintiff has no interests that are contrary to or in conflict with those of the Class he seeks to represent.

B.    The Criteria for a Class Action Pursuant to O.C.G.A. § 9-11-23(b)(1), (3) Have Also Been Satisfied.

41.

The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards for Counterdefendants under the laws alleged herein.

42.

Questions of law and fact common to the Class Members predominate over any questions affecting individual Class Members. Furthermore, a class action is superior to all other available methods for fair and efficient adjudication of this controversy. There is no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

<u>FIRST REQUEST FOR CLASS RELIEF</u>

<u>UNCONSCIONABILITY</u>

<u>(MBNA and PORTFOLIO)</u>

43.

Mr. Barkwell hereby incorporates paragraphs 1 through 42 as if set forth verbatim herein.

44.

9 U.S.C. § 2 states that contracts containing arbitration provisions are valid "save upon such grounds as exist at law or in equity for the revocation of any contract." Here, the NAF-mandated arbitration provisions in subject agreements are invalid because they are unconscionable.

45.

Considering the great business acumen and experience of MBNA when compared to Mr. Barkwell and those similarly situated, the great disparity in their relative bargaining power, the inconspicuousness and incomprehensibility of the contract language, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, any contract provision authorizing MBNA to mandate the use of NAF for arbitrations was unconscionable and therefore unenforceable as a matter of law.

46.

Here, Mr. Barkwell and those similarly situated are consumers, not corporations. MBNA did not negotiate these terms with any customers. Mr. Barkwell, like most consumers, was not in a position to bargain for more favorable contract terms, nor did he have any information concerning the bias and partiality of NAF, let alone experience with NAF's practices, before

signing an agreement. With regard to the "surprise factor," Mr. Barkwell and those similarly situated were not made aware of the practices by NAF, which MBNA certainly had knowledge of at the time the contracts were entered into.

47.

Mr. Barkwell requests an inquiry into the adoption, purpose, and effect of these terms, including MBNA's basis and justification for requiring the use of NAF's services. Furthermore, Portfolio was aware of NAF's improper arbitration practices and it too should be foreclosed from benefiting from the use of NAF as arbitrator in its consumer disputes.

48.

MBNA structured a totally one-sided transaction. The absence of equality of bargaining power, open negotiation, full disclosure, and a contract which fairly sets out the rights and duties of each party demonstrate that the transaction lacks those checks and balances which would inhibit the imposition of unfair practices such as the mandating the use of NAF's arbitration services. Thus, all arbitration awards and related judgments should be rescinded and any amounts expended by Class Members refunded

SECOND REQUEST FOR CLASS RELIEF

FRAUDULENT INDUCEMENT

(MBNA)

49.

Mr. Barkwell hereby incorporates paragraphs 1 through 42 as if set forth verbatim herein.

50.

9 U.S.C. § 2 states that contracts containing arbitration provisions are valid "save upon such grounds as exist at law or in equity for the revocation of any contract." Here, the NAF-

mandated arbitration provisions in subject agreements are invalid because Counterplaintiff and the Class Members were induced by MBNA's fraudulent concealment of facts to acquiece to them.

51.

Indeed, through its actions, MBNA (i) concealed from Counterplaintiff and the Class Members NAF's bias and impartiality, (ii) knew and intended that such concealment would induce Counterplaintiff and the Class Members into acquiescing to the arbitration provision in the cardmember agreement, (iii) Counterplaintiff and the Class Members justifiably relied on this concealment of the facts in entering the agreement and would not have done so otherwise and (iv) Counterplaintiff and the Class Members incurred damages as a result of MBNA's concealment of facts in an amount to be proven at trial.

52.

The conduct and improper practices as described herein were done with reckless disregard for the rights of Mr. Barkwell and the Class Members and with the intent to vex, injure, or annoy them while profiting from the biased arbitration process.  The acts and misconduct of MBNA entitle Mr. Barkwell and the Class Members to an award of punitive or exemplary damages in an amount appropriate to punish or to set an example.

THIRD REQUEST FOR CLASS RELIEF

BREACH OF CONTRACT

(MBNA and PORTFOLIO)

53.

Mr. Barkwell hereby incorporates paragraphs 1 through 42 as if set forth verbatim herein.

54.

Under the law of Georgia and the other states, good faith is an element of every contract. Every contract imposes upon each party a duty of good faith and fair dealing in its performance. Good faith in contracting is the obligation to preserve the spirit of the bargain rather than merely the letter, the adherence to substance rather than form. Good faith and fair dealing require substantial compliance with the spirit, and not the letter only, of a contract in its performance. Evasion of the spirit of the bargain and abuse of a power to specify terms have been judicially recognized as examples of bad faith in the performance of contracts.

55.

Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further; bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, willful rendering of imperfect performance, and abuse of a power to specify terms.

56.

MBNA knew that the arbitration requirement that it placed into its contract with Mr. Barkwell and millions of other credit card account customers was a sham. It knew that NAF had not maintained impartiality but had rather lobbied MBNA and other credit card companies to utilize its services. At least by the time it entered an agreement with Mr. Barkwell, MBNA was aware that its close involvement with NAF had resulted in an arbitration system that resulted in favorable rulings all, or nearly all, of the time. The arbitration provision in the MBNA customer

16

agreement was not developed in good faith. Rather, it was craftily engineered to mislead customers into the assumption that NAF would provide impartial arbitration services.

57.

Portfolio, as successor in interest to MBNA's claims against Mr. Barkwell and many others, was a beneficiary of the arbitration provision of the customer agreement. Portfolio is one of the nation's largest debt collection firms. It has had an extensive relationship with NAF and was well aware of the impropriety of NAF's role as arbitrator in consumer disputes.

58.

Mr. Barkwell and each Class Member suffered from an NAF arbitration either as a result of the MBNA customer agreement or, through assignment of claims from the credit card issuer, Portfolio's after-market debt collection activities.

59.

By reason of the conduct described above, MBNA and Portfolio have uniformly breached their contractual agreements with Mr. Barkwell and the Class Members by failing to act in good faith in conducting lawful and proper arbitrations.

60.

As a proximate result of the aforementioned wrongful conduct and breach committed by MBNA and Portfolio, Mr. Barkwell and the Class Members have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

<u>FOURTH REQUEST FOR CLASS RELIEF</u>

<u>FAIR DEBT COLLECTION PRACTICES ACT</u>

<u>(PORTFOLIO, MBNA, and NAF)</u>

61.

Mr. Barkwell hereby incorporates paragraphs 1 through 42 as if set forth verbatim herein.

62.

Counterdefendants are "debt collectors" as that term is defined in 15 U.S.C. § 1692(a)(6) and, in doing the acts alleged, were attempting to collect alleged consumer debts.

63.

Counterdefendants violated, at minimum, 15 U.S.C. § 1692(e) and (f), by making false or misleading representations in their unfair attempts to collect debts from Counterplaintiff and the Class Members, by among other things: (a) representing that NAF was an independent forum when it was not; (b) stating that "[p]arties have a full and equal right to present relevant and reliable direct and cross examination testimony, documents, exhibits, evidence and arguments" when they did not; (c) refusing to reveal that awards issued by NAF were the result of a conflict of interest when they were; and (d) representing that additional fees and costs awarded against consumers were lawful when they were not.

64.

As a result of Portfolio's violations of the Fair Debt Collection Practices Act, Counterplaintiff and the Class Members have been damaged in an amount to be proven at trial. They are entitled to recover the actual damages they incurred as a result of the foregoing actions of Portfolio, all statutory damages allowed by law, and reimbursement for the costs of this action together with a reasonable attorney's fee as determined by the Court.

<u>FIFTH REQUEST FOR CLASS RELIEF</u>

<u>NEGLIGENT MISREPRESENTATION</u>

<u>(MBNA, NAF, and PORTFOLIO)</u>

65.

Mr. Barkwell hereby incorporates paragraphs 1 through 42 as if set forth verbatim herein.

66.

As shown herein, MBNA and Portfolio negligently supplied false information concerning NAF's arbitration practices to foreseeable victims, including Mr. Barkwell and those similarly situated, and concealed from consumers the true nature of NAF's services and secret arrangements with credit card companies and debt collectors. This misinformation made false, deceptive, and illusory the arbitration process which was forced upon customers.

67.

These representations were, at the very least, negligently or recklessly made to customers and the general public. As a direct and proximate result of these misrepresentations, omissions, and concealments, Mr. Barkwell and the Class Members have been damaged as alleged herein.

68.

Without having been informed of the false and deceptive information at issue, Mr. Barkwell and the Class Members reasonably and actually relied upon the representations of MBNA and Portfolio. Based on such reliance, Mr. Barkwell and the Class Members did not know to refuse the terms of MBNA's mandatory arbitration provision as stated in the customer agreement. Further, they did not know to notify the arbitrator, courts, legal regulatory bodies, Attorneys General, and offices of consumer affairs at the time of a scheduled arbitration that the arbitration was invalid on numerous grounds due to the impropriety of NAF's arbitration

practices.  As a result of the aforementioned improper conduct, Mr. Barkwell and the Class Members have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

69.

The conduct and improper practices as described herein were done with reckless disregard for the rights of Mr. Barkwell and the Class Members and with the intent to vex, injure, or annoy them while profiting from undisclosed, unfair, and unlawful practices.  The acts and misconduct of MBNA, NAF, and Portfolio entitle Mr. Barkwell and the Class Members to an award of punitive or exemplary damages in an amount appropriate to punish or to set an example.

SIXTH REQUEST FOR CLASS RELIEF

CONTRAVENTION OF PUBLIC POLICY

(MBNA, NAF, and PORTFOLIO)

70.

Mr. Barkwell hereby incorporates paragraphs 1 through 42 as if set forth verbatim herein.

71.

A party may challenge an arbitration award without reliance on the Federal Arbitration Act if the award is in contravention of public policy.

72.

Courts depend heavily on private arbitration as an attractive manner in which disputes may be resolved without use of scarce judicial resources.  Counterdefendants have taken advantage of this public need by using the arbitration process as a profit-making mechanism while actively undermining all the important quasi-judicial aspects of the arbitration forum.

20

Creditors, including MBNA and Portfolio, who took their business to NAF had no danger of losing, which is exactly why NAF appealed to them.  These collective actions have compromised the legitimacy of the necessary arbitration system and thus contravene public policy.

73.

All awards which have been made by NAF since its nefarious practices began should be overturned and Counterdefendants should all be forced to disgorge any and all amounts they received as a result of these unjust awards.

WHEREFORE, Plaintiff Mr. Barkwell and the Currently Unnamed Counterclaimants pray:

(1)    For remand to Superior Court where this matter should properly be litigated;

(2)    For certification of this matter as a class action lawsuit to proceed on behalf of the class of all Currently Unnamed Counterclaimants as defined after suitable discovery has been completed;

(3)    For restitution;

(4)    For an award of such damages as are authorized by law;

(5)    For an award of all reasonable costs and attorneys' fees incurred by Mr. Barkwell and the Class Members;

(6)    For trial by jury of all matters; and

(7)    For such other and further relief as the Court may deem just and equitable.

DATED this 12th day of November, 2009.

                                Respectfully submitted,

BY:    WEBB, KLASE & LEMOND, LLC

           /s/ E. Adam Webb
           E. Adam Webb
             Georgia State Bar No. 743910
           Matthew C. Klase
             Georgia State Bar No. 141903

           1900 The Exchange, S.E.
           Suite 480
           Atlanta, Georgia 30339
           (770) 444-0773
           (770) 444-0271 (fax)

           Attorneys for Plaintiff
           Eric Barkwell and the Proposed Class

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2009, I presented the foregoing to the Clerk of

Court for filing and uploading to the CM/ECF system, which will send a notice to the counsel of

record listed below:

William L. Tucker, Esq.
Thomas F. Gristina, Esq.
Page, Scrantom, Sprouse, Tucker & Ford, P.C.
1111 Bay Avenue
Third Floor
Columbus, GA 31901

J. David Jackson, Esq.
J. Thomas Vitt, Esq.
F. Matthew Ralph, Esq.
Dorsey & Whitney LLP
50 South 6th Street, Suite 1500
Minneapolis, MN 55402-1498

Meredith H. Ragains, Esq.
Robins, Kaplan, Miller & Ciresi, LLP
2600 One Atlanta Plaza
950 E. Paces Ferry Road, NE
Atlanta, GA 30326

Nancy Baughan, Esq.
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue NE
Atlanta, GA 30303

Zulema Laurent Greene, Esq.
Portfolio Recovery Associates, LLC
PO Box 612
Red Oak, GA 30272

DATED this 12th day of November, 2009.

/s/ E. Adam Webb
E. Adam Webb, Esq.